[Cite as *State v. Pitts*, 2014-Ohio-17.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012CA00234 |
| KEITH L. PITTS | : |  |
|  | : |  |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Criminal appeal from the Stark County
                                                      Court of Common Pleas, Case No.
                                                      2012CR0965

JUDGMENT:                                   Affirmed

DATE OF JUDGMENT ENTRY:        January 6, 2014

APPEARANCES:

For Plaintiff-Appellee                        For Defendant-Appellant

JOHN D. FERRERO                         GEORGE URBAN
PROSECUTING ATTORNEY            116 Cleveland Avenue N.W.
BY: RENEE M. WATSON               808 Courtyard Centre
110 Central Plaza South, Ste. 510     Canton, OH 44702
Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant Keith L. Pitts ["Pitts"] appeals the trial court's denial of his motion to withdraw his previously entered plea to carrying a concealed weapon pursuant to R.C. 2923.12(A)(2), a felony of the fourth degree and the subsequent revocation of community control sanctions.

*Facts and Procedural History*

{¶2} On June 14, 2012, Pitts ran a red light. Massillon Police Officer Curtiss Ricker observed the traffic violation and pulled Pitts over. Upon investigation, Ricker found Pitts was driving under suspension and further, was carrying a loaded .40 caliber Glock 23 handgun concealed in his waistband.

{¶3} As a result, Pitts was later charged by the Stark County Grand Jury with one count of carrying a concealed weapon pursuant to R.C. 2923.12(A)(2), a felony of the fourth degree.

{¶4} Pitts pled guilty to the charge in October of 2012 and sentence was deferred pending a pre-sentence investigation. By Judgment Entry filed November 29, 2012, he was placed on one year of intensive probation. Also on November 13, 2012, Pitts made an oral motion to withdraw his guilty plea, which was denied by the trial court.

{¶5} On December 12, 2012, Pitts filed his notice of appeal. On that date, Pitts also filed a motion to appoint counsel in which he notified the trial court that a possible issue on appeal would be the ineffective assistance of his appointed trial counsel. Pitts filed an affidavit of indigency with his request. The trial court never ruled on Pitt's motion to appoint counsel.

{¶6}   On January 8, 2013, Pitts was taken into custody and a Motion to Revoke Probation was filed. On March 16, 2013, an evidentiary hearing was held regarding Pitts's alleged probation violation.

{¶7}   The prosecution began the probation violation hearing by calling Officer Aaron Williams of the Canton Police Department. Officer Williams stated that on January 7, 2013, he was dispatched to 1319 Walnut Avenue, Canton, Ohio. Williams testified that on that date, he was dispatched for an assault complaint. He testified that he met with a woman named Amanda, who reported that Appellant had assaulted her. Williams observed a bite mark on Amanda's arm and scratch marks on her neck. While in his cruiser, Amanda gave Officer Williams a .25- caliber firearm and a 9 mm firearm guns from the home, which she said, belonged to Pitts. On cross-examination, Williams stated that Pitts was not present when Williams was on the scene. Williams was not sure if the firearms he received were operable.

{¶8}   Williams and Amanda both called Pitts's probation officer, Robert Zehnder and told him of the incident at Pitts's apartment. Two days later, Pitts reported to Zehnder and was taken into custody for violating the terms and conditions of his probation by possessing firearms. On cross-examination, Zehnder stated that when Amanda contacted his office, she was upset with Pitts. Zehnder stated that although misdemeanor charges were filed against Pitts, those charges were later dismissed. He further admitted that he did not know if the guns seized were operable, nor did he ever see them in Pitt's possession.

{¶9}   Pitts testified that he knew once he was on probation that he could not possess firearms. As a result, the weapons were given to his girlfriend to keep during

his probation. The guns were emptied of ammunition and fitted with a gunlock. Pitts stated that his girlfriend, Amanda Rutan, was to take the weapons he gave her to one of her relatives' homes. Pitts testified that on January 7, 2013, the day the incident occurred, he had been in an escalated argument with Rutan. Pitts claimed that was the reason that Rutan contacted the police and his probation officer. Pitts was adamant that the guns were not present at his address on January 7, 2013 when the police responded.

{¶10} On cross-examination, Pitts stated that he was aware of the ISP probation rules prohibiting him from owning a firearm.

{¶11} The trial court found that Pitts violated his probation, and sentenced him to twelve months in prison.

{¶12} By Judgment Entry filed April 18, 2013, this court remanded the case to the trial court to consider the motion to appoint counsel, and notify this Court of the indigency determination and appointment of counsel on or before May 24, 2013. By Judgment Entry filed April 23, 2013, the trial court found Pitts to be indigent but did not appoint counsel to represent him. By Judgment Entry filed April 25, 2013, this Court appointed counsel to represent Pitts.

{¶13} Pitts has raised two assignments of error,

{¶14} "I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO VACATE HIS GUILTY PLEA.

{¶15} "II. THE APPELLANT'S PROBATION REVOCATION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I.

**{¶16}** In his first assignment of error, Pitts contends that the trial court erred in failing to grant his motion to withdraw his guilty plea.

**{¶17}** The entry of a plea of guilty is a grave decision by an accused to dispense with a trial and allow the state to obtain a conviction without following the otherwise difficult process of proving his guilt beyond a reasonable doubt. See *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473(1962). A plea of guilty constitutes a complete admission of guilt. Crim. R. 11(B)(1). "By entering a plea of guilty, the accused is not simply stating that he did the discreet acts described in the indictment; he is admitting guilt of a substantive crime." *United v. Broce*, 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927(1989).

**{¶18}** Crim. R. 32.1 governs the withdrawal of a guilty or no contest plea and states:

> [a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

**{¶19}** This rule establishes a strict standard for deciding a post-sentence motion to withdraw a guilty plea, but provides no guidelines for deciding a presentence motion. *State v. Xie,* 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992).S*tate v. Bailey*, 5th Dist. Stark No. 2012 CA 00183, 2013-Ohio-2852.

**{¶20}** The Ohio Supreme Court has stated pre-sentence motions to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie,* 62 Ohio St.3d 521 at

584, 584 N.E.2d 715. That does not mean, however, a defendant has an absolute right to withdraw a guilty plea prior to sentencing. Id. at paragraph one of the syllabus. There must be "a reasonable and legitimate basis for withdrawal of the plea." Id. The decision to grant or deny a pre-sentence plea withdrawal motion is within the trial court's sound discretion. Id.

{¶21} The factors to be considered when making a decision on a motion to withdraw a guilty plea are: (1) prejudice to the state; (2) counsel's representation; (3) adequacy of the Crim.R. 11 plea hearing; (4) extent of the plea withdrawal hearing; (5) whether the trial court gave full and fair consideration to the motion; (6) timing; (7) the reasons for the motion; (8) the defendant's understanding of the nature of the charges and the potential sentences; and (9) whether the defendant was perhaps not guilty or has a complete defense to the charge. *State v. Cuthbertson*, 139 Ohio App.3d 895, 898–899, 746 N.E.2d 197 (7th Dist. 2000), *citing State v. Fish*, 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist. 1995). No one *Fish* factor is conclusive. *Cuthbertson*, supra.

{¶22} In the case at bar, Pitts maintained that he had obtained a certificate from the Ohio Peace Officer Training Commission pursuant to R.C. 4749.10, which Pitts believed permitted security guards to carry concealed weapons. (Sent. T., Nov. 13, 2012 at 3-4). The permit was not admitted or offered into the trial court or appellate record.

{¶23} R.C. 4749.10(A) and (B) set forth the procedures under which a security guard may obtain the appropriate licensing to carry a gun. Sections (A) and (B) are silent regarding any mention of concealed weapons or whether a properly licensed security guard is entitled to carry one in a concealed fashion. Those sections of R.C.

4749.10 simply provide instruction regarding the procedure a security guard must follow in order to acquire a permit to carry a weapon.

**{¶24}** R.C. 4749.10(C), however, states:

Nothing in this section prohibits a private investigator or a security guard provider from carrying a concealed handgun if the private investigator or security guard provider complies with sections 2923.124 to 2923.1213 of the Revised Code. (Emphasis added.)

**{¶25}** The Second District Court of Appeals has observed,

One of the statutes that fall between those enumerated in R.C. 4749.10(C) is R.C. 2923.125, which specifically sets out the eligibility requirements and procedures one must follow to receive a permit to carry a concealed weapon. Thus, a plain reading of R.C. 4749.10(C) reveals that the legislature did not intend to permit a security guard to carry a concealed weapon unless he or she takes the additional step under R.C. 2923.125 of obtaining a concealed-carry permit. R.C. 4749.10 only provides a security guard the right to carry a firearm providing that the firearm is properly displayed and not concealed. Licensed security guards are only permitted to carry a concealed weapon if they obtain a concealed-carry permit. R.C. 4749.10(C), 2923.125.

Lastly, the legislature adopted R.C. 4749.08, which clearly states that "[n]othing in this chapter shall be construed as granting the right to carry a concealed weapon." In light of the foregoing analysis, we find that the plain language contained in R.C. 4749.10(C) and 4749.08 mandate

the conclusion that R.C. 4749.10 does not entitle a licensed, on-duty security guard to carry a concealed weapon. In order to carry a concealed weapon, a security guard must obtain a concealed-carry permit under R.C. 2923.125 in addition to the license that must be obtained under R.C. 4749.10 in order to simply carry a displayed firearm. Thus, the trial court erred when it held that R.C. 4749.10 permitted a licensed, on-duty security guard to carry a concealed weapon.

*State v. Pawelski*, 178 Ohio App.3d 2008, 2008-Ohio-5180898 N.E.2d 85(2nd Dist. 2008), ¶25.

**{¶26}** Thus, the trial court did not err when it overruled Pitts' motion to withdraw his previously entered guilty plea because Pitts was not able to establish he perhaps was not guilty or has a complete defense to the charge. *State v. Cuthbertson*, 139 Ohio App.3d at 899, 746 N.E.2d 197.

**{¶27}** Pitts' first assignment of error is overruled.

II.

**{¶28}** In his second assignment of error, Pitts complains that revocation of his community control was against the manifest weight and sufficiency of the evidence.

**{¶29}** A community control revocation hearing is not a criminal trial. The state therefore need not establish a community control violation by proof beyond a reasonable doubt. *State v. Ritenour,* 5th Dist. Tuscarawas No. 2006AP010002, 2006-Ohio-4744, ¶36; *State v. Spencer,* 5th Dist. Perry No. 2005-CA-15, 2006-Ohio-5543, ¶12; *State v. Henry,* 5th Dist. Richland No. 2007-CA-0047, 2008-Ohio-2474; *State v.*

*White* 5th Dist. Stark No. 2009-CA-00111, 2009-Ohio-6447, ¶13. As this Court noted in *Ritenour,*

> Rather, the prosecution must present substantial proof that a defendant violated the terms of his or her probation ... Accordingly, in order to determine whether a defendant's probation revocation is supported by the evidence, a reviewing court should apply the "some competent, credible evidence" standard set forth in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578 ... This highly deferential standard is akin to a preponderance of evidence burden of proof...

*State v. Ritenour,* 2006-Ohio-4744, ¶36. (Citations omitted).

**{¶30}** Once a court finds a defendant violated the terms of probation, the decision whether to revoke probation lies within the court's sound discretion...." *State v. Ritenour,* ¶37. (Citations omitted). Thus, a reviewing court will not reverse a trial court's decision absent an abuse of discretion. *State v. Sheets*, 112 Ohio App.3d 1, 677 N.E.2d 818(4th Dist. 1996); *State v. Ritenour,* ¶37. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Maurer*, 15 Ohio St.3d 239, 253, 473 N.E.2d 768 (1984).

**{¶31}** Testimony at the revocation hearing indicated that Officer Williams responded to the apartment where Pitts admitted he lived with Amanda. Pitts was not present, as he had left the residence after assaulting Amanda. Amanda, however, gave Officer Williams two guns that she said belonged to Pitts. The weapons came from the apartment where Pitts lived. Pitts admitted the weapons were his, but claimed Amanda

had taken them to a different location, then brought them back after he left that day, attempting to get even with him for the physical altercation. (Evidentiary hearing, March 6, 2013, 8-10; 12-13; 20; 28-29; 35-40).

**{¶32}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180(1990), *certiorari denied* 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183(1990). Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846(1988).

**{¶33}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964(2nd Dist.), ¶81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶34}** Although Pitts testified, cross-examined the witnesses, and argued that the he had given the firearms to his then girl friend to give to a family member, and further she reported him because she and Pitts had an altercation, the weight to be

given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The judge, as the trier of fact, was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the [the judge, as the trier of fact] may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

**{¶35}** In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

A fundamental premise of our criminal trial system is that "the [*trier of fact]* is the lie detector." *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct.

1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the "part of every case [that] belongs to the [trier of fact], who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891).

*United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267(1997).

**{¶36}** The state produced sufficient, credible evidence to support the finding that Pitts violated his community control. He lived in the house where the weapons were located and admitted they were his. The credibility of Pitts's explanation was a matter for the trial court as the trier of fact to weigh.

**{¶37}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The judge neither lost his way nor created a miscarriage of justice in convicting Pitts of violating the terms of his community control sanctions. Based upon the record, we find there was sufficient, credible evidence Pitts violated the terms of his community control, and the trial court did not abuse its discretion in its decision to revoke Pitts' community control sanction.

**{¶38}** Pitts' second assignment of error is overruled.

**{¶39}** The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur