[Cite as *State v. Murray*, 2016-Ohio-7501.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                       |
|--------------------------|---|-------------------------------|
| STATE OF OHIO            | : | Hon. Sheila G. Farmer, P.J.   |
|                          | : | Hon. W. Scott Gwin, J.        |
| Plaintiff-Appellee       | : | Hon. John W. Wise, J.         |
|                          | : |                               |
| -vs-                     | : |                               |
|                          | : | Case No. 2016CA00005          |
| DARION MONTEZ MURRAY     | : |                               |
|                          | : |                               |
| Defendant-Appellant      | : | O P I N I O N                 |


CHARACTER OF PROCEEDING:    Criminal appeal from the Stark County
                            Court of Common Pleas, Case No.
                            2015CR1293

JUDGMENT:                   Affirmed




DATE OF JUDGMENT ENTRY:     October 24, 2016




APPEARANCES:




For Plaintiff-Appellee              For Defendant-Appellant

JOHN D. FERRERO                     JACOB T. WILL
Stark County Prosecutor             116 Cleveland Avenue N.W., St. 808
110 Central Plaza South, Ste. 510   Canton, OH 44702
Canton, OH  44702

*Gwin, J.*

{¶1}  Appellant Darion Montez Murray ["Murray"] appeals his conviction and sentence after a jury trial in the Stark County Court of Common Pleas on one count of improperly handling firearms in a motor vehicle.

### Facts and Procedural History

{¶2}  Nicole Nelson lives at 1304 Maryland Ave, SW in Canton.  On July 23, 2015, around midnight, Nelson was in her bedroom with her 3-year-old grandson when she heard gunshots.  One of her daughters yelled for her to get on the ground because someone was shooting.  Nelson put her grandson on the floor and lay on top of him. Nelson did not see anyone firing a gun that night.

{¶3}  Canton police officer Scott Jones was dispatched to the scene in response to a 9-1-1 call.  On arrival, he noted shell casings lying in the road.  Jones stopped his cruiser and blocked the road to preserve the scene.  He first placed pieces of white paper near the casings to alert ID bureau officer Thomas Wasilewski to their location, and then proceeded to Nelson's home.  Jones spoke with Nelson and her daughters and observed bullet holes in the house.  One bullet went through the wall of Nelson's bedroom and came to rest inside a dresser drawer.

{¶4}  Officer Wasilewski, an evidence technician with the Canton Police Department, testified that he was called into work on the night of July 23, 2015, to respond to a scene of a shooting.  Upon his arrival at the scene, he performed a walkthrough to locate evidence that had been marked by the responding officers.  He photographed the scene and collected evidence for later analysis.  Wasilewski located a bullet that traveled inside of Ms. Nelson's home inside of a dresser drawer.  Wasilewski recovered several

.380 caliber shell casing from the scene of the shooting.  He photographed broken glass in the same area as the shells.  He further testified that when he went to search Murray's vehicle for evidence, he located two .380 caliber shell casings, one casing was silver the second casing was gold.

{¶5}	Wasilewski also noted that a van parked across the street from Nelson's home was sitting on a flat tire.  Further investigation revealed a bullet hole in the tire and a bullet hole in the side of the vehicle.  A bullet fragment was recovered from under the driver's seat of the van.

{¶6}	Sergeant Travis Pellegrino was dispatched to Aultman Hospital where Murray was being treated for a gunshot wound to the chest.  Pellegrino took photos of Murray's injuries.  Security then advised Pellegrino that Murray had drove himself to the hospital, and that his car, a maroon Chevy Impala, had been secured outside.

{¶7}	Sergeant Pellegrino and Officer Andrew Moore examined the vehicle.  They observed six fresh bullet strikes on the driver's side of the vehicle.  The passenger side was not damaged.  One bullet penetrated the vehicle and came to rest in the back seat. Two shell casings were found on the front passenger side seat.

{¶8}	Inside the hospital, Detective Victor George spoke with Murray.  Murray told George he was driving down 13th street toward Maryland when he saw a large group of females in front of a house and he decided to pull over.  He heard someone yell, "Who is that?" and he yelled back "who is that?"  Murray then stated a male approached his passenger side window, which was rolled down approximately 6 inches. The man put his hand in the window and showed him something in a baggie.  Murray said he did not know the man, so he ignored him and looked back at the crowd, but the crowd was gone.  He

then heard gunshots. One of the shots struck him in the chest. Murray said he called 9-1-1 and drove to the hospital.

{¶9} The following morning, Wasilewski returned to Nelson's home with Detectives Monter and Talkington. The officers observed bullet holes in the front porch railing of the home. It appeared that the bullets that created the holes were fired from the porch toward the street. A spent .40 caliber casing was also discovered on the porch, behind a baby seat.

{¶10} Four days later, Murray met with Officers Talkington and Monter at the Canton Police Department for an interview. Murray stated that after he pulled up on the sidewalk in front of Nelson's house to talk to a group of 20-30 girls, someone started shooting. Murray believed that someone stuck their arm out of Nelson's house and started shooting. Murray told the officers he was alone, he did not have a gun, and that no shots were fired from his car. Murray stated his driver's side window was rolled up.

{¶11} Larry Mackey of the Canton-Stark County Crime Lab examined evidence collected from the scene. He determined that the .380 caliber casings found in the road in front of Nelson's home and the casings found in Murray's car were all fired from the same weapon.

{¶12} Mackey was also able to determine that two bullet fragments collected from the road and from the parked van were .40 caliber as was the casing recovered from the front porch of Nelson's home. A bullet fragment recovered from the back seat of Murray's car was also .40 caliber. The bullet found in Nelson's dresser drawer was .380 caliber.

{¶13} On October 9, 2015, Murray was charged with one count of Improperly Discharging Firearm at or into a Habitation in violation of R.C. 2923.161, a felony of the

second degree, and one count of Improperly Handling Firearms in a Motor Vehicle in violation of R.C. 2923.16, a felony of the fourth degree.

{¶14} After presenting testimony, the jury deliberated and returned a verdict of Not Guilty on the Improperly Discharging Firearm at or into a Habitation charge, and a verdict of Guilty on the improperly Handling Firearms in a Motor Vehicle charge.

{¶15} Appellant was sentenced to eighteen months in prison.

*Assignment of Error*

{¶16} Murray raises one assignment of error,

{¶17} "I. THE APPELLANT'S CONVICTION FOR ONE COUNT OF IMPROPERLY HANDLING FIREARMS IN A MOTOR VEHICLE, IN VIOLATION OF R.C. 2923.16 WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Analysis*

{¶18} In his sole assignment of error, Murray argues that his conviction is against the manifest weight of the evidence produced by the state at trial and further, Murray challenges the sufficiency of the evidence.

{¶19} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming

this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶20} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶21} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly,

reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶22}** To find Murray guilty of improperly handling firearms in a motor vehicle, the trier of fact would have to find that Murray knowingly discharged a firearm while in or on a motor vehicle.

**{¶23}** Officers found spent .380 shell casings in the road in front of Nelson's home. After Murray and his car were located at the hospital, investigation revealed two spent .380 casings on the front seat of his car and six fresh bullet holes to the exterior driver's side of the car. Murray had a bullet wound to his chest. Larry Mackey of the Canton-Stark County Crime Lab determined that the casings found in the road in front of Nelson's home and the casings found in Murray's car were all fired from the same weapon. He

also determined that the bullet fragment found in the back seat of Murray's car was .40 caliber.

**{¶24}** Mackey explained to the jury that a semiautomatic handgun expels casings backward and to the right. He also testified that if someone were to fire a weapon inside a car, from the driver's side of the vehicle, out the driver's side window, the casings could land in the passenger seat by bouncing off the interior roof.

**{¶25}** Murray told officers he was in the car alone. Although he claimed someone from the crowd put their hand in his car, he also said that person did not have a gun in their hand.

**{¶26}** If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492(1991) at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks,* 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.* , 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can

be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

**{¶27}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Murray committed the offense of improperly handling firearms in a motor vehicle.

**{¶28}** We hold, therefore, that the state met its burden of production regarding each element of the crime of improperly handling firearms in a motor vehicle and, accordingly, there was sufficient evidence to support Murray's conviction.

**{¶29}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is

in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

{¶30} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶31} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶32} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or

sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).*

{¶33} In the case at bar, the jury heard the witnesses, viewed the video of Murray's statement and heard Murray's arguments concerning his lack of knowledge concerning who had fired the gun.

{¶34} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Murray of the charge.

{¶35} Based upon the foregoing and the entire record in this matter, we find Murray's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility

of the testimony of the state's witnesses and Murray and his arguments.  This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978).  The jury heard the witnesses, evaluated the evidence, and was convinced of Murray's guilt.

{¶36}  Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of improperly handling a firearm in a motor vehicle.

{¶37}  Murray's first assignment of error is overruled.

{¶38}  For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Stark County, Ohio is affirmed.

By Gwin, J.,

Farmer, P.J., and

Wise, J., concur