The STATE of Ohio, Appellee,

v.

WOULLARD, Appellant.

[Cite as *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2003CA54.

Decided June 25, 2004.

</div>

32

34

Suzanne M. Schmidt, Greene County Assistant Prosecuting Attorney, for appellee.

David R. Miles, for appellant.

GRADY, Judge.

{¶ 1} Christopher Woullard appeals from his conviction for domestic violence and the sentence imposed on that conviction pursuant to law.

{¶ 2} Woullard was indicted on December 19, 2002, on one count of domestic violence, in violation of R.C. 2919.25(A). The offense, which is ordinarily a first-degree misdemeanor, was charged as a felony of the fifth degree pursuant to R.C. 2919.25(D) upon an allegation that Woullard had a prior domestic violence conviction. A jury trial was held on April 30, 2003, and May 1, 2003, during which the following evidence was adduced.

{¶ 3} Chandra Denise Williams testified that on December 2, 2002, she and Woullard argued at their home at 1412 Salem, Fairborn, Ohio. The two had been boyfriend and girlfriend "off and on" for approximately eight years. The couple resided together with Williams's two children.

{¶ 4} At approximately 5:00 p.m. on that day, Woullard picked up Williams from her work at the Fairfield Commons Mall. It was apparent to Williams that Woullard had been drinking. Upon arriving home, Williams received a telephone call from her mother. Woullard, believing that the caller was someone else, became very angry and choked Williams. Fortunately, another man arrived at the home at the same time, and Williams was able to leave the house with her younger son.

{¶ 5} Williams went to her mother's house after picking up her older son from his basketball game. She called home to see whether Woullard was still there. No one answered the telephone, and she concluded that Woullard had left the residence.

{¶ 6} Williams, accompanied by her older son Michael and her sister, Lucreitica Razor, went to the residence to gather some of the boys' and her belongings. Upon stepping into her bedroom, Williams encountered Woullard. Woullard asked her what she was doing; Williams replied that she was gathering some of

her belongings to take to her mother's house because she did not "want to be bothered with the arguing." Woullard quickly stood up, "got in [her] face," pointing directly at her and threatening to harm Williams and her mother.

{¶ 7} Woullard then asked Williams for a ride to Dayton, but she declined because of his threats. Woullard became very upset and began punching, hitting, and kicking her. Williams hit her head on the wall and fell to the ground. Razor, who was across the hall in the kitchen, saw what was occurring and began screaming at Woullard. Razor grabbed a knife from the kitchen and went toward Woullard. Williams intervened and prevented Razor from entering the room.

{¶ 8} After Woullard left the room, Williams and Razor quickly left the residence. As they ran out of the house, they saw Woullard running after them, swinging a silver-colored baseball bat. Williams and Razor screamed for someone to call the police. Woullard returned to the residence. The Fairborn police arrived shortly thereafter.

{¶ 9} Williams suffered a bloody lip and a swollen hand. Officer Joseph P. May was dispatched to the residence and saw Williams's injuries. Upon securing the home, he did not locate Woullard but did recover a baseball bat from the back yard of the residence.

{¶ 10} Warren Howard, a Dayton Municipal Court probation officer, testified at trial that he had previously been assigned as Woullard's probation officer following a misdemeanor domestic violence conviction in 1998, in case No. 98–CRB–927.

{¶ 11} The jury convicted Woullard on the domestic violence charge. The trial court sentenced Woullard to 11 months of incarceration. Woullard now appeals from his conviction and sentence, asserting four assignments of error.

### FIRST ASSIGNMENT OF ERROR

{¶ 12} "The trial court erred in sentencing appellant for a felony instead of a misdemeanor."

{¶ 13} Woullard challenges the trial court's jury instructions on the prior domestic violence conviction and also the trial court's judgment of conviction based upon the language contained in the verdict form.

{¶ 14} Woullard was charged with domestic violence, R.C. 2919.25(A), which per paragraph (D) of that section is a first-degree misdemeanor. However, that same paragraph further provides that the offense is a felony of the fifth degree if the offender has previously been convicted of domestic violence. The indictment

charging Woullard alleged that he had previously been convicted of domestic violence and that the offense with which he was charged is a fifth-degree felony.

{¶ 15} When the case was presented to the jury, the court gave the following charge:

{¶ 16} "Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 2nd day of December, 2002, in Greene County, Ohio, the Defendant, Christopher Woullard, knowingly caused, or attempted to cause physical harm to a family or household member, and at the time, Christopher Woullard had previously been convicted of domestic violence."

{¶ 17} The trial court further noted that having "previously been convicted of domestic violence means having been found guilty or pleading guilty to the crime of domestic violence prior to December 2nd, 2002."

{¶ 18} R.C. 2945.75(A)(2) states that "[w]hen the presence of one or more additional elements makes an offense one of more serious degree * * * [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

{¶ 19} The jury returned a verdict of guilty. The verdict form makes no finding or other reference to the prior conviction alleged or to the degree of offense charged. Instead, it simply states: "We the Jury, being duly empaneled and sworn, find the Defendant, Christopher Woullard: Guilty of the offense of domestic violence as charged in the indictment." Thereafter, on May 2, 2003, the trial court entered a judgment convicting Woullard of "Domestic Violence, a felony of the fifth degree."

■ {¶ 20} Woullard's defense counsel failed to object to the verdict form at trial, and thus Woullard has waived all but plain error on appeal. *State v. Ballew* (1996), 76 Ohio St.3d 244, 251, 667 N.E.2d 369. Counsel's failure to object "constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." Id.

■ {¶ 21} Woullard's first contention is that the trial court did not give complete jury instructions necessary and relevant for the jury to make its determination of guilt of the felony charged under *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640. In *Comen*, the Ohio Supreme Court stated that "[a]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." Id. at paragraph two of the syllabus. We find that the above-mentioned instructions are more than adequate

to discharge the trial court of this duty, as they mentioned the element of a previous domestic violence conviction and also defined "previously been convicted."

{¶ 22} Woullard's other contention within this assignment of error is that the trial court erred when it convicted him of the offense of domestic violence as a felony rather than as a misdemeanor because the verdict form did not comply with R.C. 2945.75(A)(2). In support of this argument, Woullard asserts that his situation is similar to that in *State v. Burrow* (2000), 140 Ohio App.3d 466, 748 N.E.2d 95, wherein the appellate court reversed on the basis of an imperfect verdict form "similar to the one used in this case."

{¶ 23} In *Burrow*, the defendant was convicted of carrying a concealed weapon. The indictment contained the felony-enhancement language, which properly supplied the enhancement element of R.C. 2923.12(D), "a firearm loaded or with ammunition ready at hand." The verdict form, however, did not incorporate the language of the indictment. Nor did it contain the degree of the offense or the additional element making the offense one of a more serious degree. Moreover, while the trial court read the indictment to the jury, it did not further instruct the jury on the additional "in the commission of a felony" element. Based upon this, the appellate court reversed on the basis of the imperfect verdict form, finding plain error.

{¶ 24} We recently addressed a similar situation in *State v. Boykin*, Montgomery App. No. 19896, 2004-Ohio-1701, 2004 WL 690799. In *Boykin*, the trial court provided the following verdict forms to the jury in the matter where there was to be a felony-enhancement provision: "We, the jury, upon the issues joined in this case, do find the Defendant, MATTHEW C. BOYKIN, guilty of POSSESSION of CRIMINAL TOOLS for Check Number * * * in violation of § 2923.24(A) of the Ohio Revised Code." Id. at ¶ 130.

{¶ 25} The indictment in *Boykin* included the additional element "in the commission of a felony," but failed to describe the felony. The verdict form did not incorporate the language of the indictment, and the trial court did not further instruct the jury on the additional "in the commission of a felony" element. Despite the lack of felony-enhancement language on the verdict form, the trial court sentenced Boykin as if he had been convicted of a felony. We reversed the trial court's sentencing, finding that the trial court's failure to instruct the jury on the "in the commission of a felony" element "gave the jury a meaningful opportunity to find Boykin guilty only of the misdemeanor offense." We found that the error was not harmless, and we reversed and remanded the cause for resentencing.

{¶ 26} This case is distinguishable from *Burrow* and *Boykin,* as the focus in those cases was the trial court's failure to describe the felony-enhancement specification to the jury in its charge. In this case, the trial court did identify the aggravating circumstance in its charge, that being the prior domestic violence conviction. The trial court further explained that the jury had to find a prior domestic violence conviction to find Woullard guilty of domestic violence.

{¶ 27} In both *Burrow* and *Boykin,* a substantial-compliance rule was applied to avoid the failure to strictly comply with provisions governing jury instructions. However, the defect here is not with respect to the instructions that were given but with respect to the verdict form, which failed to contain the specific enhancement finding required by R.C. 2945.75(A)(2).

{¶ 28} The state relies on *State v. Woods* (1982), 8 Ohio App.3d 56, 8 OBR 87, 455 N.E.2d 1289, wherein the Eighth District Court of Appeals held that a verdict's failure to comply with R.C. 2945.72(A)(2) does not constitute reversible error when "the verdicts incorporate the language of the indictments, the evidence overwhelmingly shows the presence of the aggravating circumstances, and defendants never objected at trial to the form of the verdicts." Id. at 63, 8 OBR 87, 455 N.E.2d 1289.

{¶ 29} The three *Woods* requirements are satisfied here. Defendant never objected to the form of the jury's verdict. There was uncontradicted evidence of the aggravating circumstance. And, at least to the extent that it mentioned the "language of the indictments" by way of that summary reference, the verdict incorporates that language of the indictment. Nevertheless, we decline to follow *Woods* because we believe that its logic is flawed in at least two ways.

{¶ 30} First, *Woods* cites and relies on *State v. Corkran* (1965), 3 Ohio St.2d 125, 32 O.O.2d 132, 209 N.E.2d 437, which found that a verdict form that did not include an express finding of the value of property allegedly stolen was nevertheless sufficient because the defendant was charged with stealing property having a value of less than $60, the minimum value among two or more which the theft statute identified, and "[t]he very description in the indictment and in the evidence of the stolen merchandise * * * demonstrates that it possessed some value." Id. at 130, 32 O.O.2d 132, 209 N.E.2d 437.

{¶ 31} Here, unlike in *Woods,* defendant-appellant was convicted of an alternative greater degree of the offense charged, not the threshold or minimal level of the statutory offense. The jury was therefore required to reach a particular finding in order to return a verdict of guilty with respect to the greater offense. In *Woods,* the basic finding was implicit in the verdict the jury returned.

{¶ 32} Second, a substantial-compliance test ignores the further limitation the General Assembly imposed when it enacted the finding requirement in R.C.

2945.75(A)(2), which states: "Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." It is noteworthy that the version of R.C. 2945.75 involved in *Corkran* contained no similar limitation. The General Assembly presumably added it for some purpose. Engrafting a judicial rule of substantial compliance defeats that purpose and the statutory mechanism the General Assembly adopted to enforce it.

{¶ 33} We are also instructed by the General Assembly that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A). This does not prohibit the use of substantial-compliance tests, and the substantial-compliance factors set out in *Woods* impose the highest of standards. Nevertheless, the R.C. 2901.04(A) enjoinder makes it difficult to put aside the consequence that R.C. 2945.75(A)(2) plainly imposes for a failure to comply with its findings requirement: that, otherwise, the guilty verdict returned "constitutes a finding of guilty of the least degree of the offense charged." Id.

{¶ 34} These considerations cause us to conclude that, on the verdict returned, the trial court erred when it convicted defendant-appellant of the charged offense of domestic violence, R.C. 2919.25(A), as a fifth-degree felony instead of a first-degree misdemeanor, which is the least degree of that offense per R.C. 2919.25(D). Further, because the error is structural in nature, it is not waived by defendant-appellant's failure to object.

{¶ 35} The first assignment of error is sustained.

## SECOND ASSIGNMENT OF ERROR

{¶ 36} "Appellant was denied his right to a fair trial when he received ineffective assistance of counsel in violation of the Fifth, Sixth and Fourteenth Amendements [sic] to the United States Constitution."

{¶ 37} Preliminarily, we note that in order to demonstrate ineffective assistance of counsel, Woullard must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance, i.e., that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective

**42**

assistance of counsel. See id.; *State v. Parker,* Montgomery App. No. 19486, 2003-Ohio-4326, 2003 WL 21949748, ¶ 13.

{¶ 38} Woullard asserts that he suffered from ineffective assistance of counsel because trial counsel failed to request a jury instruction on self-defense, failed to insist on more specific definitions of the words "family or household member," and failed to subpoena Razor and Officer Lawrence Marshall for trial.

{¶ 39} We first address Woullard's claim that his counsel was ineffective in failing to pursue a theory of self-defense. Initially, we note that if counsel decides not to pursue every possible trial strategy, defendant is not necessarily denied effective assistance of counsel. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523. Defense counsel's strategy must have been outside the realm of legitimate trial strategy so as "to make ordinary counsel scoff" before a conviction will be reversed on the basis of ineffective assistance. See *State v. Yarber* (1995), 102 Ohio App.3d 185, 188, 656 N.E.2d 1322; *State v. Burgins* (1988), 44 Ohio App.3d 158, 160, 542 N.E.2d 707; *State v. Moore* (Mar. 21, 1998), Franklin App. No. 97APA07–896, 1998 WL 195667.

{¶ 40} Under Ohio law, to support an instruction on self-defense, an accused must prove by a preponderance of the evidence that (1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of force; and (3) the accused must not have violated any duty to retreat or to avoid the danger. *State v. Williford* (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, citing *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus. Further, "[i]f the defendant fails to prove *any one* of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." (Emphasis added.) *State v. Jackson* (1986), 22 Ohio St.3d 281, 284, 22 OBR 452, 490 N.E.2d 893.

{¶ 41} In this case, the evidence at trial does not support a self-defense scenario. First, the evidence establishes that Woullard was at fault in creating the situation giving rise to the affray. Williams testified that when she went back to her residence to pick up some of her and her children's belongings, Woullard became upset and "got in her face," threatening to kill her and her mother. When Williams declined to drive Woullard to Dayton, Woullard responded by punching, kicking, and hitting Williams. Williams's testimony was corroborated by Razor, who stated that Woullard had punched and kicked Williams after arguing with her. No evidence establishes that Williams reacted aggressively to Woullard's actions to make him retaliate. In fact, Williams stated that she fell to the ground but that Woullard continued to kick and punch her. Razor corrobo-

rated these facts, stating that she had watched her sister, who was on the ground, being kicked and punched by Woullard.

{¶ 42} Regarding the evidence that Razor grabbed a kitchen knife and went after Woullard, the record reveals that the above-mentioned facts occurred prior to Razor's obtaining the knife. Therefore, at the point Razor had grabbed the knife and approached Woullard, the elements of domestic violence had already been satisfied.

{¶ 43} Second, no evidence establishes that Woullard believed that he was in imminent danger of death or great bodily harm that necessitated the use of such force to escape the danger. Woullard claims that he had to use force to escape Razor, who had grabbed a knife from the kitchen. However, there is no evidence that Woullard saw the knife in Razor's control, since Williams prevented Razor from entering the bedroom. Furthermore, the record reveals that Woullard began beating Williams prior to Razor's obtaining the knife from the kitchen; thus the self-defense instruction would have been futile in this domestic violence case. Finally, Woullard had the opportunity to retreat when Williams and Razor ran out of the house and off the property. Instead, Woullard followed them out of the house, armed with a baseball bat.

{¶ 44} Accordingly, we find that a jury instruction on self-defense would have been futile, since he failed to prove the elements of self-defense by a preponderance of the evidence. Furthermore, a claim of ineffective assistance of counsel cannot be predicated upon a matter which did not constitute error. *State v. Getsy* (1998), 84 Ohio St.3d 180, 702 N.E.2d 866. Based on the evidence presented, we cannot conclude that trial counsel's performance fell below an objective standard of reasonableness.

{¶ 45} Woullard next asserts that he suffered from ineffective assistance of counsel because trial counsel failed to request a more specific jury instruction on the definition of "family or household member."

{¶ 46} It is error for a trial court not to give a jury all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the trier of fact. *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640. Accordingly, the trial court must give a correct jury instruction on the elements of the offense charged and all defenses raised by the evidence. *State v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279.

{¶ 47} Woullard was found guilty of domestic violence in violation of R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The statute defines "family or household member" as any of the following:

{¶ 48} "(a) Any of the following who is residing or has resided with the offender:

{¶ 49} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;

{¶ 50} "(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;

{¶ 51} "(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

{¶ 52} "(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1).

{¶ 53} The statute further defines "person living as a spouse" to be "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

{¶ 54} The trial court instructed the jury as follows: "The Defendant in this case is charged with domestic violence. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 2nd day of December, 2002, in Greene County, Ohio, the Defendant, Christopher Woullard, knowingly caused, or attempted to cause physical harm to a family or household member, and at the time, Christopher Woullard had previously been convicted of domestic violence."

{¶ 55} In defining "family or household member," the trial court instructed the jury as follows:

{¶ 56} "Family or household member means a person who is [sic] resides with the Defendant, and who is a person living as a spouse of the Defendant.

{¶ 57} "A person living as a spouse means a person who is living with the Defendant, has lived with the Defendant in a common law marital relationship, cohabitating with the Defendant, or has cohabitated with the Defendant within five years before the commission of the act in question."

{¶ 58} The general instruction on domestic violence given by the trial court is virtually identical to the language of the statute defining that offense, R.C. 2919.25(A) and 2919.25(F)(1) and (2). Likewise, the trial court's instructions in this case defining various terms and specific elements of the offense of domestic violence recite the statutory definitions.

{¶ 59} We do note that in instructing the jury on the definition of "family or household member," the trial court failed to include in its instruction language

defining all the different scenarios as contained in R.C. 2919.25(F)(1)(a)(ii) and (iii), and R.C. 2919.25(F)(1)(b). We find, however, that these alternative scenarios did not apply to this case. Hence, we reject any claim that this defect in the trial court's instructions may have misled the jury or affected the outcome of Woullard's trial, given the state of the evidence in this case.

{¶ 60} Woullard presented no evidence at trial. The only evidence about the events that led to this domestic violence came from the testimony of the victim, Williams, and her sister, Razor.

{¶ 61} Williams testified that Woullard, her children and she had lived together for approximately eight years. During that time, Woullard and she shared a bed and the household bills, and Woullard maintained a relationship with her children. Additionally, Razor referred to the bedroom at the residence as "him and Chandra's room."

{¶ 62} On this record, there is no reasonable possibility that the outcome of this trial could have been affected by the trial court's failure to include language in its domestic violence instruction more specifically defining "family and household member." Incidentally, Woullard does not provide us with suggestions on how the trial court could have "better defined" the term "family or household member." Had such an instruction been given, the outcome of this trial would have undoubtedly been the same.

{¶ 63} Therefore, we must overrule this portion of Woullard's assignment of error, as had trial counsel objected to the jury instructions, the outcome of trial would not have been different.

{¶ 64} Last, Woullard claims ineffective assistance of counsel based upon trial counsel's failure to subpoena Razor and Officer Lawrence Marshall and trial counsel's failure to request that the trial court not release the witnesses until after they testified for the prosecution.

{¶ 65} An attorney's failure to subpoena witnesses is within the realm of trial tactics and does not, absent a showing of prejudice, deny a defendant effective assistance of counsel. *State v. Hunt* (1984), 20 Ohio App.3d 310, 20 OBR 411, 486 N.E.2d 108, syllabus. Woullard must overcome the strong presumption that, under the circumstances, counsel rendered adequate assistance and that the challenged actions might be considered sound trial strategies. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 17 OBR 219, 477 N.E.2d 1128.

{¶ 66} In this case, Woullard claims that he suffered from ineffective assistance of counsel because trial counsel failed to subpoena Razor and Officer Marshall at trial. He claims that he was unable to question Razor about her prior conviction and pose other obstacles that would prevent the jury from finding her testimony

credible. Similarly, defense counsel sought examination of Officer Marshall to impeach his testimony. Officer Marshall testified that he had had no prior contact with Williams before the domestic-violence incident. Woullard claims, however, that Officer Marshall had been dispatched to a traffic-accident scene that involved Williams in August 2002.

{¶ 67} We do not find that this amounts to ineffective assistance of counsel. Woullard's trial counsel had the opportunity, and exercised the opportunity, to cross-examine both witnesses during trial. Inasmuch as trial counsel had the opportunity and used that opportunity to cross-examine Razor and Officer Marshall, it is unclear how subpoenaing them to call them as witnesses again would have changed the outcome at trial. In fact, defense counsel cross-examined Razor, and also re-cross-examined her. As the trial court pointed out, at no time did trial counsel address the issue of a prior conviction, although defense counsel had ample opportunity to do so. Similarly, the issue of Officer Marshall having prior contact with Williams did not arise, although defense counsel could have pursued this line of questioning during cross-examination.

{¶ 68} Regarding whether the failure of trial counsel to subpoena these witnesses resulted in ineffective assistance of counsel, we cannot say that but for trial counsel's failure, the results of Woullard's trial would have been different, as he had the opportunity to cross-examine these witnesses about such information. Accordingly, we find that this portion of Woullard's assignment of error has no merit. Based upon our previous discussion, we overrule Woullard's second assignment of error.

## THIRD ASSIGNMENT OF ERROR

{¶ 69} "Appellant's conviction for domestic violence is based upon insufficient evidence."

{¶ 70} Woullard asserts that there was insufficient evidence in the record for the state to have met its burden of proof on the element of "family or household member" within the charge for domestic violence. Specifically, Woullard bases this on Williams's contact with the Fairborn Police Department after his arrest to report that she and Woullard did not reside in the same household.

{¶ 71} When reviewing a trial court's decision on a sufficiency-of-the-evidence standard, an appellate court should examine the evidence to determine whether, when believed, such evidence "would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. When the evidence is interpreted most favorably toward the prosecution, sufficient evidence was pre-

sented if a rational trier of fact "could have found the essential elements of the crime proven beyond a reasonable doubt." Id.

{¶ 72} Domestic violence is prohibited under R.C. 2919.25(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Because the General Assembly believed that an assault involving a family or household member deserved further protection than an assault on a stranger, "the offense of domestic violence, as expressed in R.C. 2919.25(E)(1)(a) and related statutes, arises out of the relationship of the parties rather than their exact living circumstances." *State v. Williams* (1997), 79 Ohio St.3d 459, 463–464, 683 N.E.2d 1126. Cohabitation is the central element of the R.C. 2919.25(F)(2) definition of a person living as one's spouse. The Supreme Court has held that the essential elements of cohabitation are the sharing of familial or financial responsibilities and consortium. Id. at paragraph two of the syllabus.

{¶ 73} Possible factors establishing shared familial or financial responsibilities include provisions for shelter, food, clothing, utilities, and commingled assets. Id., 79 Ohio St.3d at 465, 683 N.E.2d 1126. These factors are unique to each case, and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact. Id. The burden of establishing cohabitation is not substantial. *State v. Young* (Nov. 20, 1998), Montgomery App. No. 16985, 1998 WL 801498. In determining issues such as whether two persons had cohabited for purposes of R.C. 2919.25(F)(2), "courts should be guided by common sense and by ordinary human experience." Id.

{¶ 74} According to Williams, Woullard and her children lived with her at 1412 Salem in Fairborn, Ohio. Williams stated that Woullard and she had been involved in a relationship "off and on" for eight years. She further testified that Woullard and she had shared a bedroom at the residence, they had shared the monthly expenses of the residence, and Woullard had engaged in a relationship with her children.

{¶ 75} During cross-examination, defense counsel attempted to elicit testimony from Williams that she did not live with Woullard. Williams explained that, after his arrest on the charge at issue, she had contacted the Fairborn Police Department to inform them that Woullard did not reside at the residence at 1412 Salem with her. Despite this, however, she testified during trial that Woullard had resided with her during the time of the incident. Williams explained that she did call the Fairborn Police Department with this information because she was concerned that she would lose her benefits with the Greene Metropolitan Housing Authority because Woullard had resided in the house.

{¶ 76} Additionally, Razor corroborated Williams's testimony by stating that on the date of the incident, she witnessed Woullard in "[h]im and Chandra's room."

{¶ 77} Guided by common sense and ordinary human experience, the average person could have concluded from this evidence that Williams and Woullard had shared their familial and financial responsibilities and that Woullard was a person living as Williams's spouse for purposes of a domestic-violence conviction. See *State v. Miller* (1995), 105 Ohio App.3d 679, 664 N.E.2d 1309.

{¶ 78} Accordingly, after viewing the evidence in a light most favorable to the prosecution, any trier of fact could have found the essential elements of the domestic violence proven beyond a reasonable doubt. Consequently, this assignment of error is overruled.

## FOURTH ASSIGNMENT OF ERROR

{¶ 79} "Appellant's conviction for domestic violence is against the manifest weight of the evidence."

{¶ 80} In this last assignment of error, Woullard asserts that his conviction for domestic violence is against the manifest weight of the evidence because Williams was not a credible witness. Because of this, the jury lost its way on the issue of whether Woullard was a "family or household member."

{¶ 81} When conducting the manifest-weight analysis, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Hufnagel* (Sept. 6, 1996), Montgomery App. No. 15563, 1996 WL 501470, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, paragraph three of the syllabus. Unlike the sufficiency-of-evidence standard of review, a reviewing court does not construe the evidence most strongly in favor of the prosecution when using a manifest-weight standard of review. *Hufnagel*, supra. A manifest-weight-of-the-evidence argument questions the believability of the evidence and asks a reviewing court to determine which of the competing inferences is more believable. Id. However, the appellate court may not substitute its judgment for that of the trier of fact on the issue of the credibility of the witnesses unless it is patently apparent that the factfinder lost its way. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97–CA–03, 1997 WL 691510.

{¶ 82} Woullard claims that the state failed to establish that he was a "family or household member," based upon the incredible testimony of Williams. We disagree.

{¶ 83} As we stated in the previous assignment of error, Williams did present conflicting testimony as to whether she lived with Woullard. Williams explained that the reason she had called the Fairborn Police Department was because she was not permitted to be living with Woullard in this type of housing, and she was afraid that she would lose her benefits. The jury heard all of the testimony at issue, including the conflicting testimony of Williams, and made a determination that Williams's testimony that Woullard and she had resided together was credible. The jury in this case had to base its judgment on the credibility of the witnesses. We cannot say that the trier of fact lost its way and performed a miscarriage of justice in determining that Woullard did reside with Williams at 1412 Salem. Hence, we defer to the jury's assessment of the credibility of the witnesses and overrule this assignment of error.

{¶ 84} Woullard's fourth assignment of error is overruled.

{¶ 85} Having sustained the first assignment of error, we will reverse Woullard's conviction and remand the case to the trial curt to enter a judgment convicting Woullard of domestic violence as a misdemeanor of the first degree and to impose a sentence pursuant to law. Otherwise, the judgment of the trial court is affirmed.

Judgment accordingly.

FAIN, P.J., and FREDERICK N. YOUNG, J., concur.