[Cite as *State v. Canales*, 2017-Ohio-5552.]


COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                           JUDGES:
                                        Hon. W. Scott Gwin, P. J.
        Plaintiff-Appellee              Hon. William B. Hoffman, J.
                                        Hon. John W. Wise, J.
-vs-
                                        Case No. 2016 CA 00141
CESAR CANALES

        Defendant-Appellant             O P I N I O N


CHARACTER OF PROCEEDING:                Criminal Appeal from the Court of Common
                                        Pleas, Case No.  2015 CR 01720


JUDGMENT:                               Affirmed


DATE OF JUDGMENT ENTRY:                 June 26, 2017


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOHN D. FERRERO                         GEORGE URBAN
PROSECUTING ATTORNEY                    116 Cleveland Avenue, NW
RONALD MARK CALDWELL                    Suite 808
ASSISTANT PROSECUTOR                    Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702

*Wise, John, J.*

{¶1} Appellant Cesar Canales appeals his conviction and sentence on two counts of rape and two counts of gross sexual imposition following a jury trial in the Stark County Common Pleas Court.

{¶2} Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS</u>

{¶3} Appellant was convicted of abusing his live-in girlfriend's two young daughters. At the time the abuse was reported, C.M. was 12, and the abuse had been occurring over a three-year period. A.P. was 8 at the time of the disclosure, and the abuse had been taking place over a 19-month period. This abuse included sexual intercourse with one victim and the attempted sexual intercourse with the other, and sexual contact with both girls.

{¶4} On May 28, 2014, sisters C.M. and A.P. disclosed to their friend Mason that their mother's boyfriend, Cesar Canales, had been doing sexual things to them. Mason in turn told her mother what the girls had told her, who then told the girls' mother what the girls had disclosed. The police were immediately called.

{¶5} Once law enforcement were called to the scene, the girls were taken to Akron Children's Hospital, where physical exams and sexual kits were performed. During these exams, DNA samples were taken from C.M.'s vagina and her panties. In addition, both girls were interviewed as part of the medical evaluation and treatment process. The girls again repeated, in more detail, what Canales had been doing to them sexually for a number of years. The most recent time of sexual abuse was the night before.

{¶6}    Subsequent analysis of the DNA samples revealed the presence of foreign male DNA in C.M.'s vagina and on her panties. As a result, a DNA sample was obtained from Canales and compared to the profile of the foreign DNA. Canales could not be excluded as the source of the foreign DNA, the profile of which had a 1 in 5,556 probability of appearance.

{¶7}    C.M. testified at trial that Canales came into her mother's bedroom when C.M. would be watching TV alone there. Canales would then take off her pants and underwear, would unzip his pants, and then put his "private part" into her "private part." C.M. described these "private parts" as what is used to go to the bathroom. (T. at 166-171).

{¶8}    C.M. testified that the last time Canales sexually abused her was the night before the disclosure. She recalled that during a family get-together at their home, her mother left to get cigarettes and food. While she was gone, C.M. went upstairs in the home to get something from her mother's bedroom. Canales was already in the bedroom, and pulled off C.M.'s pants and underwear, put her on the bed, and then had vaginal intercourse with the young girl. (T.at 181-189, 199-201).

{¶9}    Later that evening, C.M. was doing laundry with her sister A.P. and their friend, Mason, who was living with the girls' family at the time. C.M. told Mason what Canales had done to her, and told her not to tell anyone. Mason, however, told her own mother, who in turn told the girls' mother. The girls' mother then talked with her daughters, who told her what had happened. (T. at 172- 174,184).

{¶10}  A.P. also testified at trial. She stated that Canales touched her vagina on numerous occasions with his hand. She testified that Canales also touched her with his

"private," which she described as that body part that Canales used to go to the bathroom. A.P. also circled areas on an anatomical drawing to indicate the body parts she was referring to. A.P. testified that Canales did both forms of abuse multiple times, and always on the outside of her vagina. A.P. stated that Canales did not enter her vagina with his penis because she was too small. (T. at 292-296).

{¶11} During their testimony, both girls admitted that they had denied that the sexual abuse occurred to their Big Sister, Shirley Moore. In C.M.'s case, she stated that when Moore asked her about the allegations, she lied and said the abuse never occurred because she did not want to make Moore cry since she felt that Moore felt responsible for her. (T. at 175-176).

{¶12} During her testimony, A.P. stated that Moore also questioned her about the allegations, and A.P. told her that it didn't happen since A.P. "was tired of everybody talking about it." (T. at 298).

{¶13} During the girls' examinations at Akron Children's Hospital, they were interviewed by Amberly Hein Post, a social worker with the hospital who specializes on cases of child sexual abuse. During her interview with C.M., the young girl told her that Canales had "put his privates into her privates," with the last time being the night before. During her interview with A.P., Post was told that Canales had put his hands inside her pants and underwear and touched her private parts. A.P. described another time when Canales attempted to put his private part inside her private part, but she pushed him off of her. A.P. told Post that the last incident of abuse was the day before as well. (T. at 328-333, 335-337, 340-341).

**{¶14}** Dr. Eric Singer, a staff physician in the pediatric emergency room at Akron Children's Hospital, testified that he performed the sexual assault kits on both girls, which involved collecting evidence. During his interview of the girls, A.P. told him that Canales had inserted a finger inside her vagina, the last time being a day or so before. A.P. also told Dr. Singer that Canales had attempted to put his penis inside her vagina, but that it wouldn't fit. (T. at 348-349, 355-361).

**{¶15}** Detective Jerry Fuelling of the Canton Police Department testified that he was called into the case upon the report of the child sex abuse by the girls' mother, T.R. (T. at 312-313).

**{¶16}** Sarah Horst of the Forensic Biology Department of the Ohio Bureau of Criminal Investigations testified about the DNA evidence collected in this case. She examined the sexual assault kits of both girls, as well as C.M.'s underwear, which she swabbed. The items were then sent for further analysis to Jennifer Colecchia, a forensic scientist with the BCI laboratory.

**{¶17}** Colecchia detected DNA that was foreign to C.M. from C.M.'s vaginal swab, as well as from C.M.'s underwear. Colecchia submitted this DNA for further testing, specifically Y-STR, male-specific DNA testing.

**{¶18}** Hallie Garofalo, also a forensic scientist with BCI, testified about the Y-STR testing done in this case. Y-STR testing is a male-specific test. With regard to the foreign DNA in C.M.'s vaginal swab, Garofalo concluded that a single Y-STR DNA profile was consistent with Canales's DNA profile. She estimated that the rarity of this profile was 1 in every 5,556 unrelated males. A further Y-STR DNA profile was obtained from the crotch area of C.M.'s underwear, which Garofalo also determine was consistent with Canales.

The DNA profile in this case was 1 in every 6,250 unrelated males. Garofalo stated that she could not testify as to the exact source of this DNA. (T. at 205,208-211, 214-218, 377-379, 380-385, 394-395,  229, 234, 237-238, 241, 245-246).

{¶19} On June 7, 2016, at the conclusion of the trial, the jury found Appellant guilty of all counts as charged in the indictment.  The trial court sentenced Appellant to an aggregate prison term of life imprisonment with parole eligibility after serving 15 years. The specific sentences for the offenses are as follows: Count 1 - Statutory Rape: life imprisonment with parole eligibility after ten (10) years; Count 2 - Statutory Rape:  life imprisonment with parole eligibility after fifteen (15) years, with the sentences to run concurrently. For sentencing purposes only, the two counts of gross sexual imposition were merged with the rape counts. Appellant was also designated a Tier III sex offender pursuant to R.C. Chapter 2950.

{¶20} It is from this conviction and sentence Appellant now appeals, raising the following error for review:

<u>ASSIGNMENT OF ERROR</u>

{¶21} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."

**I.**

{¶22} In his sole Assignment of Error, Appellant claims his convictions were against the manifest weight and sufficiency of the evidence.  We disagree.

{¶23} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her

judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). The Ohio Supreme Court has emphasized: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' " *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012–Ohio–2179, *quoting Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. No. 21004, 2002–Ohio–3405, 2002 WL 1454025, ¶ 9, *citing State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶24} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.' " *State v. Pallai,* 7th Dist. Mahoning No. 07 MA 198, 2008–Ohio–6635, 2008 WL 5245576, ¶ 31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964 (2nd Dist.2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th

Dist. Mahoning No. 99 CA 149, 2002 WL 407847, at ¶ 13, *citing State v. Gore,* 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶25}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Hunter,* 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶26}** The jury, as the trier of fact, was free to accept or reject any and all of the evidence offered by the parties and to assess each witness' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000) *citing State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, 2003 WL 723225, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, 2003 WL 21291042, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992).

**{¶27}** Appellant argues there was insufficient evidence to support his convictions, and the convictions are against the manifest weight of the evidence. Appellant was convicted of two counts of rape, in violation of R.C. §2907.02(A)(1)(b), which reads:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

* * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶28}** In addition, Appellant was convicted of gross sexual imposition, in violation of R.C. §2907.05(A)(4), which reads:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶29}** At trial, both C.M. and A.P testified as to their dates of birth. As set forth in more detail above, each of the girls testified that Appellant touched their vaginas. C.M. testified that Appellant engaged in vaginal intercourse with her. A.P. testified that Appellant attempted to engage in vaginal intercourse with her but was unsuccessful due to her small size. Each of the girls testified the abuse occurred repeatedly. The DNA evidence further supported the testimony of C.M.

{¶30} We find the evidence presented at trial is sufficient for the trier of fact to find beyond a reasonable doubt the necessary elements to establish the two counts of rape and the two counts of gross sexual imposition. The jury's verdicts were not against the manifest weight of the evidence.

{¶31} Accordingly, Appellant's Assignment of Error is overruled.

{¶32} For the reasons stated in the foregoing opinion, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Wise, John, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/d 0621