[Cite as *State v. Baker*, 2025-Ohio-1568.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30249 |
| | : | |
| v. | : | Trial Court Case Nos. 2024 CR 01092; |
| | : | 2024 CR 01255 |
| SHANE BAKER | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 2, 2025

. . . . . . . . . . .

MICHAEL MILLS, Attorney for Appellant

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Shane Baker appeals from his convictions in the Montgomery County Court of Common Pleas on one count of domestic violence following a jury trial and one count of violating a protection order following a guilty plea. For the reasons set forth below, we will affirm the judgments of the trial court.

I.     Trial Testimony and Course of Proceedings

{¶ 2} On April 26, 2024, in Montgomery C.P. No. 2024 CR 1092, Baker was indicted by a Montgomery County grand jury on one count of domestic violence (knowingly; two priors), a third-degree felony in violation of R.C. 2919.25(A).   The indictment was based on a physical altercation that occurred on or about April 4, 2024.

{¶ 3} On May 8, 2024, a Montgomery County grand jury indicted Baker in Montgomery C.P. No. 2024 CR 1255 on four counts of violating a protection order, fifth-degree felonies in violation of R.C. 2919.27.   The indicted charges involved actions that occurred between April 28 and April 29, 2024.

{¶ 4} In July 2024, a jury trial was held on the domestic violence charge in Case No. 2024 CR 1092.   Three witnesses testified at trial.   The victim testified first.   Trial Tr. 201-256.   She became friends and "drinking buddies" with Baker in 2021.   Eventually, she began dating Baker "off and on" and had sex with him "off and on."   At one point, the victim was asked by her landlord to move out of her Vandalia residence due partially to the fact that Baker was an "unwanted person" who would spend nights there.   The victim testified that Baker had spent the night at her Vandalia residence on several occasions and that she had spent the night at Baker's Preble County residence on several occasions.

{¶ 5} The victim testified that she spent a large amount of time at Baker's residence in July 2022 after he had a motorcycle accident.   The victim also spent a great deal of time at Baker's residence from October 2022 until January 2023.   Baker was in prison

during that October to January timeframe, but the victim often went to his residence to check on his dog for him. She stopped doing that in January 2023 because Baker started accusing her of things she had not done.

{¶ 6} The victim filed a petition for a civil protection order against Baker in the Preble County Common Pleas Court in January 2023. She listed her address as the same address where Baker resided, and she asked for exclusive possession of that residence. The trial court granted the petition. The victim subsequently asked for the protection order to be terminated, and the court granted her request. According to the victim's testimony at trial, she did not live with Baker and only filed the petition for a civil protection order because she was angry at him. The victim stated that she had never considered herself as having lived with Baker because "living out of a bag" is not living together, she never used his address for anything other than the request for a civil protection order she had filed, they never paid each other's bills, and they never dated exclusively. According to the victim, it is not living together when you spend "the night with somebody because you've had too much to drink to drive home." Trial Tr. 240. The victim explained that she loved Baker's children and wanted more with Baker than what was actually there, but she never considered moving in with him.

{¶ 7} The victim stayed at Baker's residence the night before the domestic violence incident at issue in this appeal. April 4th was Baker's birthday. He asked the victim to drive him to his dentist's appointment, which she did. After the dentist's appointment, they went drinking at the following establishments: the Village Inn, the Greenleaf Inn, Maggie's, Whiskey Barrel, and back to the Greenleaf Inn. Since it was Baker's birthday,

a number of individuals bought him alcohol at these establishments. During the final stop at the Greenleaf Inn, the victim left the establishment when she believed a fight might start. She went outside and sat in Baker's vehicle. Baker then came out and entered the truck. He slapped her while they were in the truck and put her in a headlock. The victim exited the truck, and Baker followed her. He then hit her, which caused her to fall to the ground. Baker then drove away. The victim called the police. The victim spoke with Deputy Larry Beasley of the Montgomery County Sheriff's Department. She told him that she and Baker had lived together for a period of time and she had moved out in January 2023.

{¶ 8} Deputy Beasley testified next at the trial. Trial Tr. 257-266. He was dispatched to the Greenleaf Inn in the late evening of April 4, 2024, and met with the victim at an address on East Third Street at approximately 1:00 a.m. on April 5, 2024. He noticed marks on the right side of her face. She did not appear intoxicated. Deputy Beasley asked the victim whether she and Baker had lived together in the past. She stated that she had moved out of his residence. Based on the information he obtained during his interview of the victim, he decided to charge Baker with domestic violence.

{¶ 9} Detective Robert Schneider with the Montgomery County Sheriff's Office testified last at the trial. *Id.* at 266-277. He had obtained a copy of a video from the Greenleaf Inn that showed Baker hit the victim. Detective Schneider spoke with the victim over the phone and in person prior to the trial. He explained that the victim's story had changed at trial. According to Detective Schneider, the victim's original story was that Baker and she had lived together at his house in Preble County until she moved out

in January 2023.

{¶ 10} The trial court accepted into evidence as State's Exhibit 2 a series of short videos from the camera at the Greenleaf Inn. The video footage showed what took place in the parking lot during the incident in question. The video showed the victim exiting the Greenleaf Inn and getting into Baker's truck via the passenger-side door. Before she could completely close the truck's door, Baker quickly exited the bar and slammed the door shut against her. Baker then got into his truck via the driver-side door. Once he was inside the truck, he physically abused the victim by putting her into a series of headlocks and pulling her head toward him several times. Both of them then exited the vehicle. While they were standing outside the truck, Baker hit the victim in the face, which knocked her to the ground. Baker then got into his truck and drove away.

{¶ 11} The jury found Baker guilty of domestic violence. The trial court scheduled a sentencing hearing. Before Baker was sentenced on his domestic violence conviction, he entered a guilty plea to one count of violating a protection order in Case No. 2024 CR 1255. The trial court accepted his guilty plea and found him guilty of violating a protection order. The remaining counts of the indictment in that case were dismissed as part of the plea deal.

{¶ 12} On August 14, 2024, following a sentencing hearing, the trial court sentenced Baker in both cases. The court sentenced Baker to three years in prison for his domestic violence conviction and one year in prison for violating a protection order, to be served concurrently.

{¶ 13} Baker filed a timely notice of appeal from his convictions in both cases.

However, he only raises assignments of error related to his domestic violence conviction in Case No. 2024 CR 1092. Therefore, we will affirm without discussion the trial court's judgment in Case No. 2024 CR 1255.

II. Baker's Domestic Violence Conviction Was Supported by Sufficient Evidence and Was Not Against the Manifest Weight of the Evidence

{¶ 14} Baker's first two assignments of error are interrelated, and we will address them together. They state:

THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S CRIMINAL RULE 29 MOTION.

THE STATE OF OHIO FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION FOR R.C. [2919.25] AND THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15} Because a Crim.R. 29 motion tests the sufficiency of the evidence presented at trial, rulings on Crim.R. 29 motions are reviewed under the same standards that apply to a review for sufficiency of the evidence. *State v. Crabtree*, 2019-Ohio-3686, ¶16 (2d Dist.), citing *State v. Williams*, 74 Ohio St.3d 569, 576 (1996). "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v.*

*Thompkins*, 78 Ohio St.3d 380 (1997). When reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at ¶ 11, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997). Therefore, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138-139 (1998).

{¶ 16} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12, citing *State v. Hufnagel*, 1996 WL 501470 (2d Dist. Sept. 6, 1996). When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 17} Baker was convicted of domestic violence in violation of R.C. 2919.25(A),

which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." There is no dispute on appeal that the State established beyond a reasonable doubt that Baker knowingly caused or attempted to cause physical harm to the victim. This was established by the testimony at trial and the video recording admitted into evidence at trial. Further, Baker did not appear to contest this issue at trial. Nor does he dispute on appeal that the State proved he previously had been convicted of two prior qualifying offenses. Rather, Baker focused his argument at trial and in this appeal on whether the State proved beyond a reasonable doubt that the victim was a "family or household member."

{¶ 18} A "family or household member" includes "a person living as a spouse," which is defined as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(1)(a)(i) and (2). "The burden of establishing cohabitation is not substantial." *State v. Woullard*, 2004-Ohio-3395, ¶ 73 (2d Dist.), citing *State v. Young*, 1998 WL 801498 (2d Dist. Nov. 20, 1998). "In determining issues such as whether two persons had cohabitated for purposes of R.C. 2919.24(F)(2), 'courts should be guided by common sense and by ordinary human experience.' " *Id.*, quoting *Young* at *3.

{¶ 19} "The General Assembly recognized the special nature of domestic violence when it drafted the domestic violence statutes." *State v. Williams*, 79 Ohio St.3d 459, 463 (1997). "Clearly, the General Assembly believed that an assault involving a family

or household member deserves further protection than an assault on a stranger." *Id.* Therefore, the offense of domestic violence "arises out of the relationship of the parties rather than their exact living circumstances." *Id.* at 464.

{¶ 20} Baker argues that the State failed to prove that the victim was a family or household member. According to Baker, (1) the victim testified that she had lied initially to the police about living with Baker during their sporadic relationship; (2) there was no financial relationship between Baker and the victim; and (3) "[b]esides occasional sex and overnight stays, the victim acknowledged that there was never any real relationship between the two parties." Appellant's Brief, p. 7.

{¶ 21} The State responds that the evidence showed that the victim was a family or household member based on the fact that she had cohabitated with Baker during at least a portion of the five years prior to his commission of the domestic violence offense. According to the State, (1) the victim told Deputy Beasley that she had lived with Baker and had recently moved out; (2) the victim filled out a form for the Montgomery County Sheriff's Department that stated that she had lived with Baker in the past; and (3) the victim previously sought a civil protection order against Baker and stated on the paperwork that she lived at the same address as Baker.

{¶ 22} We conclude that Baker's domestic violence conviction was not against the manifest weight of the evidence and was supported by sufficient evidence. The victim provided the primary testimony regarding the nature of her relationship with Baker. It was undisputed at trial that in the five years prior to the domestic violence at issue in this appeal, Baker and the victim had sexual relations "off and on" and spent a substantial

amount of time staying at each other's residences.  The victim testified that she was asked to move out of her residence in Vandalia partially due to the fact that Baker was staying overnight there.  She also testified that she spent several nights at Baker's residence in Preble County.  The record includes evidence that the victim filed a petition for a domestic violence civil protection order in the Common Pleas Court of Preble County in January 2023 and listed her address as the same address where Baker lived in Preble County.  In that petition, the victim asked the court to prevent Baker from interfering with her right to occupy the residence.  While the victim testified at trial that she had lied about the fact they were living together because she was angry at Baker, the jury was free to believe "all, part, or none of [her] testimony."  *State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.), citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).  Deputy Beasley and Detective Schneider also testified about being told by the victim that she had lived with Baker within the five years prior to the domestic violence incident.  The victim also explained at trial that she had stayed overnight at Baker's house the night before the domestic violence incident and then took him to his dentist's appointment.  She also testified about spending a great deal of time at Baker's residence after he was involved in a motorcycle accident and later when he went to prison.  The victim explained that she loved Baker's children and that she and Baker would occasionally spend the day together with each other's grandchildren.  All of these facts are consistent with two people who had cohabitated with each other.

{¶ 23} Given all the evidence presented to the jury, we cannot conclude that the jury clearly lost its way in finding that the victim was a family or household member within

the meaning of R.C. 2919.25(F)(2).   While the victim tried to explain at trial why she did not consider herself and Baker to be two people who were living together as spouses, there was more than sufficient evidence presented to the jury to support a finding that Baker and the victim had cohabitated for a period of time in the five years prior to the April 5, 2024 domestic violence incident.   Also, it is important to remember that a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the State's version of events over the defendant's version.  *State v. Gale*, 2006-Ohio-1523, ¶ 19 (10th Dist.).   The victim provided more than ample testimony to support a finding that she qualified as a family or household member within the meaning of R.C. 2919.25(F)(2) despite the fact that she did not personally believe she was "living together" with Baker due to their non-exclusive, "on and off again" relationship.   Finally, the State was not required to prove that Baker and the victim cohabitated during the entire time they were in a relationship.   Rather, the State was required to prove that they had cohabitated for some period within the five years prior to the date of the commission of domestic violence.   The jury could have reasonably concluded that the testimony and documentary evidence presented at trial proved this beyond a reasonable doubt.

{¶ 24} Baker's first and second assignments of error are overruled.

III.   Baker Failed to Establish that He Was Denied Effective Assistance of Trial Counsel

{¶ 25} Baker's third assignment of error states:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF

COUNSEL AS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS.

{¶ 26} In order to succeed on an ineffective assistance of trial counsel claim, a defendant must establish: (1) his trial counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984), paragraph two of the syllabus; *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688; *Bradley* at 142. To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 27} In reviewing ineffective assistance of trial counsel claims, "we will not second-guess trial strategy decisions, and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Mason*, 82 Ohio St.3d 144, 157-158 (1998), quoting *Strickland* at 689. Therefore, "trial counsel is allowed wide latitude in formulating trial strategy[.]" *State v. Olsen*, 2011-Ohio-3420, ¶ 121 (2d Dist.). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-

2553, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524-525 (1992).

{¶ 28} In this assignment of error, Baker argues that his trial counsel was ineffective for the following four reasons: (1) he failed to object to or move to strike the victim's statements concerning her seeking a protection order against Baker, which opened the door to the previously suppressed evidence under Evid.R. 404(B); (2) he failed to object to potential inflammatory or prejudicial statements made during voir dire and the prosecutor's closing argument; (3) he failed to object to questions concerning the victim's alleged contact with defense counsel and the idea that she had been pressured to change her testimony; and (4) he made inflammatory statements referring to Baker as a "POS" during closing arguments. Appellant's Brief, p. 10-11, citing Trial Tr. 304. According to Baker, these mistakes by his trial counsel prejudiced Baker's defense to such a degree that but for these mistakes the outcome of the trial would have been different. *Id.* at p. 11. We will address each of these in turn.

{¶ 29} First, Baker takes issue with the fact that his trial counsel did not prevent State's Exhibit 1 from being admitted into evidence at trial. State's Exhibit 1 was a redacted copy of a civil protection order the victim had sought and obtained against Baker in January 2023. Also contained in that exhibit was a redacted copy of a March 1, 2023 judgment entry granting the victim's motion to terminate the civil protection order. Baker contends that his trial counsel failed to object to or move to strike the victim's statements concerning her seeking a protection order against Baker, which opened the door to the previously suppressed evidence under Evid.R. 404(B).

{¶ 30} The State contends that the failure of Baker's trial counsel to object to the

victim's testimony about the "restraining order" can be fairly viewed as a strategic decision. Further, the State contends that Baker cannot establish prejudice through this failure because, even without State's Exhibit 1 in evidence, the evidence was sufficient to sustain Baker's conviction, because the victim had already testified that she filed an application with a court requesting exclusive occupancy of a location as between her and Baker. Therefore, the State believes Baker cannot establish ineffective assistance of trial counsel.

{¶ 31} Our review of Baker's argument is hampered by the fact that Baker does not cite the trial transcript to show us where his trial counsel failed to object or moved to strike the victim's statements. " 'It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error.' " *State v. Montgomery*, 2013-Ohio-4509, ¶ 69 (2d Dist.), quoting *State v. Watson*, 126 Ohio App.3d 316, 321 (12th Dist. 1998). Further, we "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based[.]" App.R. 12(A)(2). Due to Baker's failure to comply with App.R. 12, we cannot conclude that his trial counsel provided ineffective assistance by failing to object to or move to strike the victim's statements concerning her "restraining order" against Baker.

{¶ 32} Further, based on our review of the record, we do not believe Baker's trial counsel provided ineffective assistance when confronted with the victim's restraining order testimony. At first, the trial court sustained Baker's objection to the admission of State's Exhibit 1 but allowed the State to question the victim about an "application" she

had filed in which she listed her address as the same as Baker's and sought sole occupancy of the residence at that address. However, during the questioning of the victim by Baker's counsel about filing the "application," the victim stated, "I did. Filed a restraining order on him." Trial Tr. 231. Baker's counsel then asked her questions about her motivations for filing the application. She stated that she had been trying to get back at Baker when she filed the application and that she ultimately asked the court to withdraw the restraining order. After this testimony, the State asked the trial court to reconsider its previous ruling on the admissibility of State's Exhibit 1 due to the fact that the defense had "opened the door" by asking questions about it after the victim referred to it as a restraining order. The trial court agreed with the State and admitted State's Exhibit 1 into evidence but made redactions to the exhibit so that the jury could not see any allegations about the underlying domestic violence incident.

{¶ 33} Baker's trial counsel did not cause the victim to describe her application as a "restraining order." Once the victim provided this testimony, however, Baker's trial counsel asked follow-up questions that resulted in the victim stating that she sought the order because she was angry at Baker and that she subsequently moved to get the order rescinded. That follow-up testimony supported Baker's position that the victim may have lied when she stated in that application that she lived with Baker. Further, Baker has failed to explain on appeal on what basis his trial counsel could have objected to keep out the victim's testimony that she sought a "restraining order" against Baker. Finally, Baker has not shown that he was prejudiced by anything his trial counsel did or did not do with regard to the admission of State's Exhibit 1 into evidence. Rather, his trial

counsel successfully had it excluded from evidence until the victim provided testimony about the nature of it. At that point, Baker's trial counsel tried to minimize the impact of the exhibit by getting the victim to admit that she had filed the petition for a protection order out of anger and ultimately asked for it to be dissolved. Moreover, the potential prejudice from the admission into evidence of State's Exhibit 1 was minimized when the trial court redacted the documents to prevent the jury from seeing the facts related to the underlying domestic violence incident. Upon this record, we cannot conclude that Baker was provided with inadequate representation or that there was a reasonable probability that his trial counsel's alleged error relating to State's Exhibit 1 changed the result of the trial.

{¶ 34} Next, Baker argues that his counsel was ineffective when he failed to object to potentially inflammatory or prejudicial statements made by the prosecutor during voir dire and closing argument. The State responds that Baker's reference to potential inflammatory or prejudicial statements made by the prosecutor during voir dire and closing argument cannot establish a basis for reversal because Baker failed to identify which statements were prejudicial. We agree.

{¶ 35} Baker does not provide citations to the trial transcript relating to where the potentially inflammatory or prejudicial statements were made. Further, Baker does not identify in his brief what potentially inflammatory or prejudicial statements were made. As noted above, it is not our duty to scour the record to find support for an appellant's argument. It is an appellant's duty to "identify in the record the error on which the assignment of error is based[.]" App.R. 12(A)(2). Due to Baker's failure to comply with

App.R. 12, we cannot conclude that his trial counsel provided ineffective assistance by failing to object to potentially inflammatory or prejudicial statements made by the prosecutor during voir dire and closing argument.

{¶ 36} Baker also argues that his trial counsel was ineffective because he failed to object to questions concerning the victim's alleged contact with defense counsel and the idea that she had been pressured to change her testimony. Once again, Baker fails to provide any citation to the record to inform us where this alleged ineffective assistance occurred. Further, Baker does not explain what objections his trial counsel should have made to this unidentified testimony and why such objections likely would have been successful. Without knowing the precise objections Baker believes his trial counsel should have made, we cannot determine whether such objections may have been successful. Therefore, we cannot conclude that Baker's trial counsel was ineffective because he failed to object to questions concerning the victim's alleged contact with defense counsel and the idea that she had been pressured to change her testimony.

{¶ 37} Finally, Baker contends his trial counsel provided ineffective assistance because he made inflammatory statements referring to Baker as a "POS" during closing arguments. The following is the passage from closing argument with which Baker takes issue: "We acknowledged at the beginning of this case that Shane was going to look like a POS. I trust that you will see the video, and you will agree with me; he was a POS. No doubt about it." Trial Tr. 304.

{¶ 38} We assume for purposes of resolving this assignment of error that "POS" means "piece of sh*t." While we agree with Baker that generally it is not ideal for defense

counsel to make a disparaging comment about his client during closing argument, we must review defense counsel's closing argument as a whole.   Throughout the trial, it was obvious that Baker had committed an act of violence against the victim.   The testimony and video evidence made this clear.   The only viable argument to prevent Baker from being convicted of domestic violence was that the State failed to prove beyond a reasonable doubt that the victim fit within the definition of "family or household member" in R.C. 2919.25(F)(2).   Apparently, Baker and his counsel had made the decision to focus on that rather than to make any half-hearted challenge about whether Baker committed the violent acts.   This was logical given the uncontested testimonial and video evidence.

{¶ 39} While calling Baker a "POS" during closing argument may not have been the best way of implementing the defense's strategy, it was a way to let the jury know that Baker was not disputing the fact that he had physically assaulted the victim.   And defense counsel then quickly transitioned into the important duty the jury had to hold the State to its burden of proving each element of the domestic violence offense beyond a reasonable doubt.   In other words, even if Baker had assaulted the victim (i.e., "was a POS"), the State still had to prove that Baker and the victim had cohabitated together in order for the jury to return a guilty verdict.   Once again, although we would not have chosen the precise words used by defense counsel to make this point, the closing argument given by Baker's counsel was part of a logical trial strategy.   Therefore, we cannot conclude that defense counsel's closing argument constituted ineffective assistance.

**{¶ 40}** Baker's third assignment of error is overruled.


IV.    Conclusion

**{¶ 41}** Having overruled all of Baker's assignments of error, we will affirm the judgments of the trial court.

. . . . . . . . . . . . .


EPLEY, P.J. and HANSEMAN, J., concur.